## IN RE BECKER.

[Cite as In re Becker (1974), 39 Ohio St. 2d 84.]

(No. 74-124—Decided July 10, 1974.)

Mr. *Stephan M Gabalac,* county prosecutor, and *Mr. Frederic L. Zuch,* for appellant.

Mr. *Robert C. Meeker,* for appellee.

CELEBREZZE, J. R. C. 2501.02, in pertinent part, provides:

"* * * the court [of appeals] shall have jurisdiction:

"(A) Upon an appeal upon questions of law to review, affirm, modify, set aside, or reverse judgments or *final orders* of courts of record inferior to the Court of Appeals within the district, including the *finding, order* or *judgment* of a Juvenile Court that a child is *delinquent, neglected,* or *dependent,* for prejudicial error committeed by such lower court * * *." (Emphasis added.)

Appellant argues that since the Juvenile Court may transfer a case to the Court of Common Pleas for criminal prosecution pursuant to R. C. 2151.26 without making a determination of delinquency, that transfer is not a final, appealable order.

Amended R. C. 2151.26, in pertinent part, provides:

"(A) After a complaint has been filed alleging that a child is delinquent by reason of having committed an act which would constitute a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, after making the following determinations:

"(1) The child was fifteen or more years of age at the time of the conduct charged;

"(2) There is probable cause to believe that the child committed the act alleged;

"(3) After an investigation including a mental and physical examination of such child * * * that there are reasonable grounds to believe that:

"(a) He is not amenable to care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children;

"(b) The safety of the community may require that he be placed under legal restraint, including, if necessary, for the period extending beyond his majority.

"`* * *`

"(E) `* * *` Such transfer abates the jurisdiction of the Juvenile Court with respect to the delinquent acts alleged in the complaint."

Prior to this amendment, which became effective in substantially the same form on November 19, 1969, when a finding of delinquency was made and a transfer was ordered, that finding, coupled with the transfer, was held to be a final, appealable order. *In re Whittington* (1969), 17 Ohio App. 2d 164, 175.

Appellant asserts that the transfer order which was made in this cause does not contain a finding of delinquency, so that *Whittington* and cases following it are inapposite. Since there has been no finding of delinquency, the order of transfer is not an appealable order pursuant to R. C. 2501.02. Specifically, absent a finding that a child is delinquent, neglected, or dependent, no appeal is available.

This court finds the rationale of *People* v. *Jiles* (1969), 43 Ill. 2d 145, 150, 251 N. E. 2d 529, especially persuasive:

"To permit interlocutory review of such an order would obviously delay the prosecution of any proceeding in either the juvenile or the criminal division, with the result that the prospect of a just disposition would be jeopardized. In either proceeding the primary issue is the ascertainment of the innocence or guilt of the person charged. To permit interlocutory review would subordinate that primary issue and defer its consideration while the question of the punishment appropriate for a suspect whose guilt has not yet been ascertained is being litigated in reviewing courts. We are unwilling to sanction such a procedure."

Although the juvenile procedure in Illinois is entirely different from our own, that same rationale is applicable to our statutory scheme. The General Assembly has shown great concern for the speedy and just disposition of criminal proceedings, e. g., R. C. 2945.71—time within which hearing or trial must be held; and R. C. 2945.73—discharge for delay in trial.

It is not necessary to examine Dickens' *Bleak House* in order to perceive the prospect that a just disposition can be jeopardized by delay. The history of *In re Whittington, supra,* as reported (page 170), provides ample evidence:

"After two years and six appeals this case has been before the Juvenile Court, the Common Pleas Court, the Fifth District Court of Appeals, the Supreme Court of Ohio, the United States Supreme Court and is now again before this Court of Appeals. * * * and as a result of the numerous appeals filed and issues raised prior to determination there has been no final determination in this case to this day."

Now, this court has taken other affirmative action to put an end to unnecessary delay, as has the General Assembly. It is time for an end to endless appeals that perpetuate procrastination, and a time for this court to give direction and a definite order of instruction determining the path of appellate procedure in these matters.

We hold that a transfer order, pursuant to R. C. 2151.-26, absent a finding of delinquency, is not a final, appealable order, and that any error complained of must be raised in an appeal from the judgment of the Court of Common Pleas.

For the foregoing reasons, the judment of the Court of Appeals is reversed.

*Judgment reversed.*

HERBERT, CORRIGAN and P. BROWN, JJ., concur.
O'NEILL, C. J., STERN and W. BROWN, JJ., dissent.

STERN, J., dissenting. The central issue in this case is whether a Juvenile Court order transferring criminal proceedings to the adult criminal system is a "final appealable order." My dissent is based upon both statutory and policy grounds.

88

Juvenile Court procedures and appellate jurisdiction are normally regulated by statute. For this reason, the appealability of a Juvenile Court order transferring criminal proceedings against a juvenile to the adult criminal system depends, in each of the several states, "largely upon the varying provisions of the applicable statutes * * * ." *People* v. *Jiles* (1969), 43 Ill. 2d 145, 148, 251 N. E. 2d 529. The applicable statutes in Ohio are R. C. 2501.02 and R. C. 2151.07, and Juv. R. 30.

R. C. 2501.02(A) provides:

"(A) Upon an appeal upon questions of law to review, affirm, modify, set aside, or reverse judgments or *final orders of courts of record inferior to the Court of Appeals* within the district, including the finding, order, or judgment of a Juvenile Court that a child is delinquent, neglected, or dependent, for prejudicial error committed by such lower court;

"* * *." (Emphasis added.)

R. C. 2151.07 begins by stating that "The Juvenile Court is a court of record * * *."

Juv. R. 30 specifies the procedure for a Juvenile Court to transfer a case involving a child to the adult court system for criminal prosecution. The effect of such a transfer is to terminate the jurisdiction of the Juvenile Court with respect to the alleged criminal acts supposedly committed by the child. For purposes of the criminal prosecution, the transfer order is as final an order as the Juvenile Court can render. Since the Juvenile Court is a court of record inferior to the Court of Appeals, the transfer order is directly appealable pursuant to R. C. 2501.02(A). The judgment of the Court of Appeals in this case should, therefore, be affirmed.

In support of their position, the majority stresses that portion of R. C. 2501.02(A) which lists among appealable orders "the finding, order, or judgment of a Juvenile Court that a child is delinquent, neglected, or dependent * * * ." However, a reading of R. C. 2501.02(A) in its entirety does

not support the restrictive interpretation placed upon the statute by the majority. The listing does not purport to be an exclusive group of appealable Juvenile Court orders pertaining to children. Instead, it merely names certain orders which the drafters of the legislation apparently felt needed specific mention.

-II-

In determining the finality, and thus the appealability of the Juvenile Judge's order, we must also consider the nature of the action involved in a transfer proceeding.

A reading of Juv. R. 30 indicates that the order of transfer must determine much more than "innocence or guilt" of an accused, as would occur in a preliminary hearing in a felony case during a grand jury bind-over proceeding. Before reaching the "innocence-guilt probable cause" determination, a Juvenile Court is required to consider other factors. The policy behind the Juvenile Court Act was examined in *Kent* v. *United States* (1966), 383 U. S. 541, 554, which delineated the basis upon which Juvenile Courts represent society's special concern for children, as follows:

"1. The theory of the * * * Juvenile Court Act * * * is rooted in social welfare philosophy rather than in the *corpus juris*. Its proceedings are designated as civil rather than criminal. The Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The objectives are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment. The state is *parens patriae* rather than prosecuting attorney and judge. But the admonition to function in a 'parental' relationship is not an invitation to procedural arbitrariness."

The court then proceeds, at page 560, to hold that "the determination of whether to transfer a child from the statutory structure of the Juvenile Court to the criminal processes * * * is * * * a 'critically important proceeding.' "

The specific question with which we are confronted

here is whether the transfer order, when issued, finally affected a substantial right, and thereby ripened into a reviewable final order. In my opinion, it did. The "probable cause" issue as to the juvenile's innocence or guilt is only one of the guidelines to be used by the Juvenile Judge in his determination whether to transfer a child's case to the adult criminal court system.

It is therefore clear that in proceedings involving delinquent children, the question of transfer of the child to the adult criminal court system is separate and apart from the court's finding that a child is delinquent.

In *Kent v. United States, supra,* the court specifically held, at page 552, that the order of the Juvenile Court, waiving its jurisdiction and transferring petitioner for trial, was appealable.

The Ohio Juvenile Court Act, R. C. Chapter 2151, grants to the trial judge considerable latitude within which to determine whether he should retain jurisdiction over a child, or whether he should waive jurisdiction by transferring such child to the adult criminal system.

Juv. R. 30 sets forth procedural regularity and guidelines for the court's determination of the issue presented. That rule gives the court a substantial degree of discretion as to the facts to be evaluated, the weight to be given them, and the conclusion to be reached.

The Juvenile Court is vested with definite responsibilities to see that, for instance, juvenile cases shall be heard separately and apart from those of adults, *e. g.,* the child may be excused from attendance at the hearing, the records pertaining to the case are confidential, and the child is not to be considered a criminal. The net effect, therefore, is that the delinquent child is entitled by law to certain procedures and benefits as a consequence of his statutory right to the "exclusive" jurisdiction of the Juvenile Court. If, upon being tried as a juvenile, the child is found to be an offender, he is committed to the Division of Social Administration. Tried as an adult, he can be confined to a penal institution for many years, or even life, depending, of course, upon

the nature of the crime and the penalty provided therefor by law.

Ohio, as well as most other states and the federal government, has adopted a policy of special consideration to be given to juveniles who offend the law, viz., the state acts not as an adversary but seeks to serve the needs of the child in "civil," not "criminal," proceedings. Therefore, to the child, the forum where his case will be heard is of utmost importance to his future. If we mean what we say—that the Ohio Juvenile Court Act has for its laudable purpose the rehabilitation of the child, and a sincere attempt to satisfy the needs of the child in being able to become a useful citizen when he enters adulthood—then the determination of the trial judge as to the transfer of the case is a judgment in and of itself, independent of the innocence or guilt of the child. The proceedings for such transfer meet the requirements to effect a final appealable order as defined by *Schindler* v. *Standard Oil Co., supra* (165 Ohio St. 76).

O'NEILL, C. J., and W. BROWN, J., concur in the foregoing dissenting opinion.