**In re WILLIAMS.**

[Cite as *In re Williams* (1996), 111 Ohio App.3d 120.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APF11–1502.

Decided May 14, 1996.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Keith Cornwell,* Assistant Prosecuting Attorney, for appellee state of Ohio.

*Stacey Lewis Carter* and *Stacey L. Sidon,* for appellant Dayon Williams.

DESHLER, Judge.

This is an appeal by appellant, Dayon Williams, from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, dismissing appellant's Civ.R. 60(B) motion for lack of subject-matter jurisdiction following an order by the juvenile court transferring the case to the general division of the common pleas court for criminal prosecution.

On June 15, 1995, a complaint was filed against appellant, then fifteen years of age, in the juvenile court, alleging one count of murder and one count of attempted murder. The complaint arose out of an incident on June 14, 1995, in which Charles Petty was killed and Gregory Biehl was wounded as a result of shots fired from a car of which appellant was the driver. On July 17, 1995, the state filed a motion, pursuant to Juv.R. 30, seeking the juvenile court's relinquishment of its jurisdiction and transfer of the case to the general division of the common pleas court for criminal prosecution of the minor as an adult.

The juvenile court conducted a hearing on September 13, 1995. At the hearing, the state presented two witnesses, Vanetta Burress, an eighteen-year-old companion of the shooting victims, and Dana Farbacher, a Columbus Police detective. The defense presented the testimony of Jason Debow, an eyewitness to the shooting incident, and Deforest Biehl, a companion of the shooting victims.

The testimony indicated that on June 14, 1995, Vanetta Burress, Charles Petty, Gregory Biehl and Deforest Biehl drove to the house of a friend on Robins Road in Burress's vehicle, a Ford LTD. While at the house, Gregory Biehl, an acquaintance of appellant, saw appellant walk out of a residence across the street. Biehl told his companions, "I'm gonna go f____ with him." Biehl walked up to the appellant and slapped him in the head. A fight between appellant and Biehl ensued.

Burress testified that, once the fight ended, appellant jumped up, went to his car and said, "[a]ll right Nigger, I'll be back. I'll be back. I'll be back." Appellant then drove away. Burress, Petty and the Biehls then drove to Petty's

residence. After stopping there for about fifteen minutes, they proceeded along Northtowne Boulevard, at which time they observed appellant and two other individuals in a car driven by appellant. Appellant made a U-turn and began to follow Burress's car, sounding his car horn from behind.

Burress testified that she attempted to turn right on Ferris Road when appellant cut her off. Gregory Biehl and an individual in appellant's car began arguing. The passenger in appellant's car asked, "[w]ho jumped my boy? Who jumped Dayon?" Burress gave the following testimony about the events that next occurred:

"After that he—Greg—Greg says, 'I—I—ain't nobody jumped him. I whipped his bitch ass myself.' Dayon pulls out a gun and pulls back and says 'F____ that' and opened fire. And * * * I wasn't paying too much attention to what Greg and them said, because I thought that they were just gonna get out of the car, and they was maybe gonna fight again. * * * And then when he said 'F____ that' I looked over and I was like 'What?' and then he pulled out a gun, and he just was like reared back. * * * And he just opened fire. He was blasting on us."

Burress heard ten or eleven shots and she then drove away. At the time of the shooting, Charles Petty, who died from the gunshot wounds he received, was seated in the front passenger seat. Gregory Biehl, who also received gunshot wounds, was seated in the back passenger seat.

Burress testified that the only individual she observed with a weapon was the appellant. Burress acknowledged that a weapon was found in a bag in her car. She stated that she had never seen the gun before.

Dana Farbacher, a homicide detective with the Columbus Police Department, conducted an investigation of the shooting. Nine 9 mm shell casings were recovered at the intersection of Ferris and Karl where the shooting occurred. Ten bullet holes were discovered in the passenger side of Burress's vehicle. A search of Burress's vehicle revealed a handgun located in a tan travel bag. The detective stated that the weapon found in Burress's vehicle had been fired at least twice and possibly three times.

The vehicle driven by appellant was subsequently located by police. There were no bullet holes in that vehicle. One 9 mm shell casing was recovered from the inside of appellant's vehicle. According to Detective Farbacher, two of the shell casings matched a gun recovered from the appellant's vehicle while the remainder of the shell casings came from an unidentified weapon.

Shortly after the shooting, the appellant was identified by witnesses as a suspect. He was subsequently arrested at a bus stop in Zanesville, Ohio.

Jason Debow, an eyewitness to the shooting, testified that he was travelling to a friend's house when he came to the stoplight at the intersection of Ferris and

Karl Roads. Debow was stopped directly behind Burress's Ford LTD. He also observed a foreign model car parallel to the Ford. Debow saw shots fired into the Ford LTD from the foreign model vehicle. Debow thought he saw a shotgun from inside the Ford LTD. On cross-examination, Debow stated that he did not see any guns pointed out of the window of the Ford LTD nor did he hear any shots coming from that vehicle.

Deforest Biehl testified that, after the initial fight at Robins Road, he and Petty, Burress and his brother Gregory went back to the Wake Robins apartments. Biehl stated that, during that time, Burress went to the trunk of her car, removed a gun and put it inside a bag underneath some clothes. Biehl indicated that the gun belonged to his brother.

By entry filed September 18, 1995, the juvenile court found probable cause to believe that appellant committed the acts alleged in the complaint. A second hearing was conducted beginning October 3, 1995, to determine the juvenile's amenability to rehabilitation within the juvenile justice system. By entry filed October 4, 1995, the juvenile court made a finding that the child was not amenable to care or rehabilitation in any facility for the care of delinquent children and that the safety of the community might require that the child be placed under legal restraint for a period extending beyond the child's majority. Thus, the juvenile court granted the state's motion to transfer the matter to the general division of the common pleas court for criminal prosecution of appellant as an adult. The juvenile court filed an amended entry on October 5, 1995, to reflect that the granting of the state's motion to relinquish jurisdiction pursuant to Juv.R. 30 included both the offenses of attempted murder and murder.

On October 25, 1995, appellant filed a motion for relief from judgment, pursuant to Civ.R. 60(B). By decision filed October 27, 1995, the juvenile court dismissed appellant's motion for lack of subject-matter jurisdiction.

On appeal, appellant sets forth two assignments of error for review:

"Assignment of Error No. 1:

"The court below abused its discretion and committed reversible error when it denied the minor child's motion for relief from judgment filed pursuant to the Civ.R. 60(B) and Juv.R. 45 for lack of subject-matter jurisdiction.

"Assignment of Error No. 2:

"The court below abused its discretion and committed reversible error in overruling [the] minor child's [Civ.R.] 60(B) motion because it acted unreasonably, arbitrarily, and unconscionably in rendering said decision."

Both of appellant's assignments of error challenge the propriety of the juvenile court's ruling on appellant's Civ.R. 60(B) motion; thus, we will address the assignments of error jointly.

■ In general, the procedures to be followed by a juvenile court in determining whether to transfer a case for criminal prosecution are set forth under R.C. 2151.26 and Juv.R. 30. The purpose behind both R.C. 2151.26 and Juv.R. 30 "is 'the assessment of the probability of rehabilitating the child within the juvenile justice system.'" *State v. Watson* (1989), 47 Ohio St.3d 93, 95, 547 N.E.2d 1181, 1184. "In making this assessment, the juvenile court enjoys wide latitude to retain or relinquish jurisdiction, and the ultimate decision lies within its sound discretion." *Id.*

■ The first issue raised by appellant is whether the juvenile court erred in holding that it did not have jurisdiction to consider appellant's Civ.R. 60(B) motion once it entered an order transferring the matter to the general division of the common pleas court.

In dismissing appellant's Civ.R. 60(B) motion for lack of subject matter jurisdiction, the juvenile court relied in part upon the Ohio Supreme Court's decision in *In re Becker* (1974), 39 Ohio St.2d 84, 87, 68 O.O.2d 50, 52, 314 N.E.2d 158, 159–160, in which the court held that "a transfer order, pursuant to R.C. 2151.26, absent a finding of delinquency, is not a final, appealable order, and * * * any error complained of must be raised in an appeal from the judgment of the Court of Common Pleas." The juvenile court also relied upon this court's decision in *State v. Harrell* (Mar. 19, 1992), Franklin App. No. 91AP–226, unreported, 1992 WL 55444. In *Harrell,* the appellant asserted a violation of constitutional rights where the juvenile court denied a motion for a new rehabilitation hearing and failed to resume jurisdiction after appellant claimed that newly discovered evidence was available to show that the juvenile court's initial relinquishment of jurisdiction was erroneous. The *Harrell* court, relying in part upon *Becker, supra,* held that "appellant's allegation that the 'newly discovered' evidence would have changed the outcome of the amenability hearing was an issue reserved for appeal upon entry of a final order by common pleas." *Harrell, supra.*

Appellant asserts that *Becker* and *Harrell* are both factually distinguishable from the instant case. Specifically, appellant argues that in the present case, appellant filed his Civ.R. 60(B) motion before an indictment was returned in the general division; thus it is contended, this case is distinguishable from the facts of *Becker,* where the appellant appealed his transfer to a higher court for review, and also distinguishable from the facts in *Harrell,* in which the minor was

transferred and had already been indicted when the minor produced the newly discovered evidence.

Apart from the above factual distinctions, which we do not find to be dispositive, appellant has not cited any authority for the proposition that, subsequent to the transfer of a case by the juvenile court pursuant to Juv.R. 30, but prior to the time of an indictment in the general division, the juvenile court retains jurisdiction to consider a motion. Juv.R. 30(I), which provides that "[t]he transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint," does not support appellant's position. Appellant's real contention appears to be that the holding in *Becker* should be reconsidered in light of subsequent case law, including, as cited in appellant's supplemental authority, the Ohio Supreme Court's decision in *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213, in which the court addressed the issue of orders entered in "special proceedings."

■ This court and other appellate courts in this state have previously declined invitations to overrule *Becker* in juvenile transfer cases and we likewise decline to do so in the instant case. See, *e.g.*, *In re Granderson* (May 14, 1992), Franklin App. No. 92AP–363, unreported, 1992 WL 104080; *State v. Brown* (June 27, 1990), Lorain App. No. 89CA004643, unreported, 1990 WL 94223; *State v. Coyne* (Apr. 8, 1994), Lake App. No. 93–L–068, unreported, 1994 WL 171646. Based upon Ohio Supreme Court precedent, by which we are bound, and in light of the language of Juv.R. 30, we find that the juvenile court did not err in dismissing appellant's Civ.R. 60(B) motion. Although "a judgment granting or denying a Civ.R. 60(B) motion is, as a rule, a final appealable order, * * * a party may seek Civ.R. 60(B) relief only from a final judgment * * *." *Busa v. Lasorella* (May 4, 1995), Cuyahoga App. No. 67980, unreported, 1995 WL 264449.

■ Even if we agreed with appellant's contention that the juvenile court retained jurisdiction to consider the newly discovered evidence, appellant has failed to show that the juvenile court should have granted appellant's Civ.R. 60(B) motion. We note that the juvenile court made a specific finding that, even assuming it had jurisdiction over the issue of the newly discovered evidence, "[d]efendant's Civ.R. 60(B) motion does not state a basis for relief from judgment."

The basis for appellant's motion was the contention that one of appellant's witnesses at the September 13 hearing, Deforest Biehl, was subsequently "murdered as he allegedly attempted to commit the crime of robbery." Appellant asserted, in his supporting memorandum before the juvenile court, that "[t]he recent events shed a new light on Deforest Biehl's credibility and further bolsters the argument that Dayon Williams in all probability was acting in self defense."

Appellant further contended that the juvenile court made a mistake of fact in finding that appellant had chased the victims. Appellant argued that the testimony indicated that the defendant's "and the victims['] cars took opposite directions and only consequently met up at the location of the shooting."

The juvenile court, in ruling on defendant's motion, noted the following regarding the testimony of Deforest Biehl:

"Deforest's testimony at the probable cause hearing established little. The main import of Deforest's testimony was to establish that there was a gun in the back seat of the car in which Deforest was riding and that it was placed there by the driver of the car, Vanetta Burress. Deforest's testimony contradicted that of the prosecution's witness, Vanetta Burress, who testified that she did not know where the gun came from. The court acknowledged this in its findings of fact stating that '[W]hile there is question in this court's mind as to whether or not Vanetta Burress, witness for the State, is telling the truth about the gun in the back of the car, since there was a witness who also states the opposite of her testimony, it is a big jump for this court therefore to say that everything that Vanetta Burress said is absolutely untruthful.' * * * Deforest's testimony was favorable to the defendant's case. Thus, the 'newly discovered evidence' would not have changed the outcome of the bindover proceeding."

The juvenile court further found, in addressing appellant's contention that the court's findings were erroneous, that "it is clear from the motion that Defendant misconstrued much of the evidence presented during the bindover proceeding." We find no abuse of discretion in the juvenile court's determinations.

As noted by the juvenile court, the limited testimony presented by Deforest Biehl during the hearing was favorable to appellant; it would strain logic to adopt appellant's argument that an attack on the credibility of his own witness, whose testimony was favorable to appellant and contradicted the testimony of a prosecution witness, would have changed the outcome of the juvenile court's decision. Further, we agree with the juvenile court that appellant has misconstrued the testimony at the hearing. The testimony nowhere indicates that appellant's vehicle and Burress's vehicle "only consequently met up" at the location of the shooting as asserted in appellant's motion. Rather, the only testimony on this issue indicates that the two cars passed each other on the road, at which time appellant made a U-turn and pulled up alongside Burress's vehicle. Further, contrary to appellant's assertion, there was no testimony that Gregory Biehl fired the first shots. Accordingly, even assuming that the juvenile court retained jurisdiction to consider appellant's Civ.R. 60(B) motion, appellant cannot show prejudice from the court's dismissal as the "newly discovered" evidence would not have changed the outcome of this case.

Appellant's first and second assignments of error are without merit and are overruled and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

TYACK and LAZARUS, JJ., concur.