OPINION
{¶ 1} Defendant-appellant Bartolone Excavating, Inc. appeals the December 12, 2001, Judgment Entry of the Mansfield Municipal Court which granted judgment in favor of plaintiff-appellee Grasan Equipment Company.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 19, 2000, plaintiff-appellee Grasan Equipment Company, Inc. [hereinafter appellee] filed a Complaint for Breach of Contract. Appellant alleged that defendant-appellant Bartolone Excavating, Inc. [hereinafter appellant] failed to pay for the lease of a machine and failed to pay for repairs appellee made to another piece of equipment. On August 18, 2000, appellant filed an Answer and Counterclaim. In the Counterclaim, appellant raised claims of breach of contract, fraud, lost profits, business interference and negligence.
 {¶ 3} The Complaint and Counterclaim arose from the following facts. On April 27, 2000, appellant leased a machine that screened topsoil from appellee. The lease called for a fee of $7,000.00 for the rental of the machine for one month. Appellant provided a deposit of $1,000.00 at the outset of the lease. The disagreement between the parties centered upon when payment of the balance was due for the lease of the equipment and whether appellant owed appellee for repairs allegedly made by appellee to a piece of equipment owned by appellant. In regard to the rented machine, when appellee failed to receive payment after appellee believed payment was overdue, appellee rendered the rented machine inoperable. Appellant, however, contended that the machine was rendered inoperable before payment of the balance was due. Appellant claimed that due to appellee's actions, appellant was unable to use the rented machine to fill orders for topsoil, thereby losing money. The matter proceeded to a bench trial conducted April 8, 2001, and April 12, 2001.
 {¶ 4} On September 18, 2001, the trial court issued a Judgment Entry in which it found that appellant had breached the contract to pay for the lease of the machine and failed to pay for repairs appellee made to a piece of equipment owned by appellant. The trial court found that appellant had full use of the rented topsoil machine for 28 days of a 30 day rental period and incurred a service charge of $450.00 for the repair of the other piece of equipment. Therefore, the trial court awarded appellee $4,662.68 for the balance due on the lease and $450.00 for the repair service.[1]
 {¶ 5} Subsequently, on November 26, 2001, appellant filed a Motion for Reconsideration, claiming that the trial court failed to rule upon appellant's counterclaims. On November 27, 2001, appellee filed a Civ.R. 60(B) motion asking the court to correct a miscalculation of damages. Subsequently, on November 29, 2001, appellant filed a Civ.R. 60(B) motion, arguing that appellant was entitled to relief because the trial court failed to rule on the counterclaims in the prior judgment entry.
 {¶ 6} On December 12, 2001, the trial court issued a judgment entry. In the judgment entry, the trial court acknowledged that it had committed an error in calculating the damages, and thereby amended the award of damages to reflect an award of $5,533.34 for balance due on the lease. Further, the trial court acknowledged that it had neglected to rule upon appellant's counterclaims in the prior judgment entry. Therefore, the trial court granted appellant's 60(B) motion and motion for reconsideration. The trial court then proceeded to deny appellant's counterclaims. In so doing, the trial court reaffirmed its previous judgment and award of $450.00 in damages to appellee for the repair service.
 {¶ 7} It is from the December 12, 2001, Judgment Entry that appellant appeals raising the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT'S CLAIM FOR BREACH OF CONTRACT.
 {¶ 9} "II. THE TRIAL COURT COMMITTED ERROR BY DENYING APPELLANT'S CLAIM FOR LOST PROFITS."
 {¶ 10} Before we address appellant's assignment of error, we must address the procedural history that lead to this appeal. The trial court issued its initial Judgment Entry on September 18, 2001. No appeal was taken from that judgment.
 {¶ 11} In a Judgment Entry filed December 12, 2001, the trial court granted both a Civ.R. 60(B) Motion and a Motion for Reconsideration made by appellant.[2] The trial court acknowledged that it had failed to address appellant's counterclaim in the September 18, 2001, Judgment Entry. The trial court then proceeded to deny appellant's counterclaims. It is from that December 12, 2001, Judgment Entry that appellant appeals, raising issues regarding the trial court's denial of appellant's counterclaims.
 {¶ 12} Generally, a Civ.R. 60(B) motion cannot be used as a substitute for a timely appeal. Doe v. Trumbull County Children Services Bd. (1986), 28 Ohio St.3d 128, 502 N.E.2d 605 paragraph two of the syllabus. However, on the other hand, a Civ.R. 60(B) motion cannot be used to modify an order that is not final and appealable. Civ.R. 60(B) ("On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the [stated] reasons . . . " Emphasis added.); In re Williams (1996), 111 Ohio App.3d 120, 125, 675 N.E.2d 1254. In the absence of a final order, the judgment is interlocutory and "subject to revision" pursuant to Civ.R. 54(B). Brandywine Homes, Inc. v. Kern (1999), Warren App. No. CA98-11-146, 1999 WL 527837. Further, this court has subject matter jurisdiction to review only final orders of lower courts within their districts. See Section 3(B)(2), Article IV, Ohio Constitution; In accord R.C. 2501.02; Prod. Credit Assn. v. Hedges (1993), 87 Ohio App.3d 207, 621 N.E.2d 1360.
 {¶ 13} Therefore, if the September 18, 2001, Judgment Entry was a final, appealable order, appellant should have presented appealable issues through timely filed direct appeals. However, if the September 18, 2001, Judgment Entry was not a final, appealable order, the parties have the right to appeal after a final entry is issued in the case.
 {¶ 14} We find that the September 18, 2001, Judgment Entry was not a final, appealable order. A final appealable order is "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment." R.C. 2505.02(B)(1). Further, Civ.R. 54(B) states that "[w]hen more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim . . . the court may enter final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . ., shall not terminate the action as to any of the claims . . ., and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims. . . ."
 {¶ 15} In this case, the trial court failed to rule on appellant's counterclaims in the September 18, 2001, Judgment Entry, as acknowledged by the trial court in the December 12, 2001, Judgment Entry. The September 18, 2001, Judgment Entry did not adjudicate all of the claims or determine the action and prevent a judgment. Therefore, the September 18, 2002, Judgment Entry was not a final, appealable order. Therefore, the September 18, 2001, Judgment Entry was subject to revision. Hence, appellant could not appeal until the trial court entered a final order, i.e. after the trial court addressed all of the claims and determined the action.
 {¶ 16} In so ruling we recognize that the trial court granted appellant's and appellee's Civ. R. 60(B) motions in addition to granting appellant's Motion for Reconsideration. Since no final appealable order had been issued, technically Civ.R. 60(B) was inapplicable. However, we see no prejudicial error in the trial court's grant of relief. Although identified in part as a grant of relief pursuant to Civ.R. 60(B), the trial court was free to modify or reconsider its previous, non-final order. Therefore, this court will address appellant's assignments of errors on their merits and without reference to Civ.R. 60(B).
 I {¶ 17} In the first assignment of error, appellant contends that the trial court's decision was against the manifest weight of the evidence. Appellant argues that the contract between the parties was ambiguous and that parol evidence, namely an invoice provided to appellant by appellee, showed that the balance on the lease was due on May 26, 2000. Therefore, appellant claims that it was appellee that breached the contract when it discontinued appellant's use of the machine prior to the close of business on May 26, 2000. We disagree.
 {¶ 18} "When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286. Therefore, determining whether a conviction is against the manifest weight of the evidence, this Court must: "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph 1 of syllabus. The discretionary power to grant a new trial is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant. Otten, supra.
 {¶ 19} We find that the trial court's decision was not against the manifest weight of the evidence. The written contract stated that payment for the rental of the equipment was payable in advance. Evidence showed that appellee's representatives orally agreed with appellant to delay payment temporarily. However, there was conflicting evidence as to when the parties orally agreed the payment was to be made.
 {¶ 20} Robert Armbruster, a salesman for appellee, testified that although appellee's policy was to obtain payment for a lease in advance, appellee told appellant that appellee was willing to take a deposit at the onset of the lease and forestall the balance due on the lease for a few days until appellant could decide whether to lease the equipment or buy it. This testimony was corroborated by Steven Forker, sales manager for appellee. Within a couple of weeks, appellee needed to collect the rest of the month's rent for the machine. Armbruster contacted Brandy Bartolone of Bartolone Excavating, Inc., and informed him that payment was due. Bartolone responded that he would pay the balance but he needed an invoice from which to pay. As a result, appellee generated and submitted an invoice to appellant. Armbruster and Forker both testified that at no time did the parties discuss nor agree that payment of the balance would be due at the end of the month.
 {¶ 21} Bartolone's testimony supported Armbruster's testimony regarding appellee's demand for payment and how the invoice came to be generated. Bartolone testified that Armbruster had called him a couple of times demanding payment. Appellant testified that he told Armbruster that "we'd pay him, no problem, just get me an invoice because, you know, we have to pay off an invoice." Once appellee generated and submitted the invoice, appellant did not pay the invoice immediately.
 {¶ 22} Despite Bartolone's testimony that he agreed that he would pay once he had an invoice, appellant seeks to rely upon language on the invoice that stated that payment was due May 26, 2000. However, the invoice also stated that payment was "due upon receipt." The terms of the agreement between the parties, which resulted in the generation of the invoice, did not include an agreement that the payment was due May 26, 2000. The evidence supports a finding that the invoice was generated as a result of an agreement that the payment was due immediately and that the terms on the invoice, relied upon by appellant, were not part of the agreement between the parties.
 {¶ 23} Upon review, we find that the trial court, as trier of fact, did not lose its way and create a manifest miscarriage of justice when it found that appellant, not appellee, breached the contract. Appellant's first assignment of error is overruled.
 II {¶ 24} In the second assignment of error, appellant contends that the trial court erred when it denied appellant's claim for lost profits. We find that our holding in assignment of error I is dispositive of this issue. Appellant's claim for lost profits is premised on a finding that appellee breached its contract with appellant when it rendered the topsoil machine inoperable. Since we have found that the trial court's decision, that appellant breached the contract when it failed to pay the balance due and that appellee did not breach the contract when it rendered the equipment inoperable, was not against the manifest weight of the evidence, appellee's lost profit claim is baseless.
 {¶ 25} Appellant's second assignment of error is overruled.
 {¶ 26} The judgment of the Mansfield Municipal Court is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Mansfield Municipal Court is affirmed. Costs to appellants.
By Edwards, J., Gwin, P.J. and Farmer, J. concur.
[1] The September 18, 2001, Judgment Entry did not state the monthly rental fee agreed to by the parties.
[2] No error is raised regarding the trial court's grant of appellee's Civ.R. 60(B) Motion and subsequent re-calculation of damages.