[Cite as *State v. Nash*, 2025-Ohio-796.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| -vs- | : | |
| | : | |
| ANTON NASH | : | Case No. 2024CA00042 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Stark County Court of Common Pleas, Case No. 2023CR2206

JUDGMENT: Affirmed

DATE OF JUDGMENT: March 10, 2025

APPEARANCES:

For Plaintiff-Appellee

VICKI L. DESANTIS
Assistant Prosecuting Attorney
Stark County, Ohio
110 Central Plaza, Suite 510
Canton, OH 44702-1413

For Defendant-Appellant

VICTORIA FERRY
Assistant State Public Defender
250 E. Broad St., Suite 1400
Columbus, OH 43215

*Montgomery, J.*

**{¶1}** Defendant-appellant, Anton Nash ("Nash"), appeals from the February 26, 2024, Judgment Entry of the Stark County Court of Common Pleas finding him guilty of two counts of felonious assault with firearm specifications, pursuant to a plea agreement after discretionary transfer proceedings to adult court. The Court sentenced Anton to an aggregate sentence of 12 to 15 years. For the reasons set forth in this opinion, we affirm the trial court in all respects.

## STATEMENT OF THE FACTS AND THE CASE

**{¶2}** On or about April 29, 2023, then 15-year-old Nash attended a 16-year old's birthday party and apparently brought a firearm with him. There were allegations that two opposing gangs were present, and at some point, an altercation between various individuals broke out. Nash discharged his firearm into the crowd and ultimately shot one victim three times, including a shot to the victim's chest. The victim suffered serious bodily harm but did manage to survive.

**{¶3}** The State charged Nash with one count of attempted murder, two counts of felonious assault, and one count of inducing panic – all counts also contained firearm specifications. Pursuant to Juv. R. 30, R.C. 2152.10 and R.C. 2152.12, the State filed a motion to transfer jurisdiction from the juvenile court to adult court, arguing that Nash was not amenable to care or rehabilitation in the juvenile system and that the community's safety required adult sanctions.[1] At the time of the charges, Nash was on probation,

---

[1] Nash was previously adjudicated a juvenile delinquent on three separate occasions - October 3, 2020, November 15, 2022, and March 6, 2023.

having been adjudicated delinquent for prior offenses, and was in the Ohio Department of Youth Services'("ODYS") custody, living in an ODYS facility.

{¶4} Nash initially pled "not true" to the charges. On June 22, 2023, after retaining new defense counsel, Nash stipulated to a finding of "probable cause" for the offenses. Because the State requested a "discretionary transfer" rather than a "mandatory" one, the court ordered a full psychological evaluation, to assist with its amenability determination in accordance with the statute. Dr. Aimee Thomas, an expert in the field and relied upon by the court in many prior instances, evaluated Nash and prepared an "amenability report."

{¶5} Because Nash stipulated to probable cause thereby waiving a probable cause hearing, on August 24, 2023, the juvenile court held the amenability hearing. The State, Nash, his attorney, and his grandparents were present. Based on Dr. Thomas' credentials, her extensive experience, and the court's prior reliance on Dr. Thomas the State and Nash's counsel stipulated to Dr. Thomas' report. Importantly however, the parties *did not agree* on the ultimate issue of Nash's amenability. See Tr. of Proceedings, August 24, 2023, at p.3. Indeed, both parties requested an opportunity to provide arguments as to whether Nash was amenable to the juvenile system, and did in fact provide such arguments.

{¶6} The State argued against amenability claiming that Nash has a history of juvenile delinquency and was on probation at the time of the incident in question, he knowingly took a firearm to a 16-year old's birthday, he discharged the firearm into the crowd and then shot at a victim's chest nearly killing him. The State maintained that all prior attempts at diversion were unsuccessful, and that Nash was mature enough in all

respects for the transfer to adult court.  Conversely, Nash's counsel argued the specific factors in Dr. Thomas' report that weighed *in favor of* amenability.  Nash's counsel asserted that the juvenile system still had sufficient time, nearly 5 years, to rehabilitate Nash (until 21 years), that Nash has protective traits and cares deeply about his family, that Nash was attacked at the party and was not the aggressor, and overall, that Nash's youth favors amenability.

{¶7}    The Court appreciated counsel's arguments and explained to Nash's grandparents that it was ultimately the Court's decision whether to transfer Nash to adult court. The Court expressly stated that Dr. Thomas was "careful not to give her opinion as to whether a person is amenable or not;" but rather, she "listed a number of factors in favor and a number of factors against but she recognizes that it is ultimately the Court's decision whether [Nash] is amenable."  Tr. of Proceedings, August 24, 2023, at p.8. Ultimately, after considering the amenability report, counsel's arguments, and reviewing the many factors in favor of and against transfer set forth in the Ohio Revised Code, the court issued a judgment entry with Findings of Fact and Conclusions of Law, as well as a separate order of transfer to adult court.

{¶8}    Following the discretionary transfer, the Stark County grand jury indicted Nash with one count of attempted murder, two counts of felonious assault, and one count of inducing panic; and each of these charges carried accompanying firearm specifications.  Subsequently however, pursuant to a negotiated plea deal, Nash pled guilty to two counts of felonious assault – both with three-year firearm specifications – and avoided the most serious of the charges – attempted murder.  The Court dismissed the charges for attempted murder and inducing panic with a firearm in exchange for his

plea of guilty. Following a Crim. R. 11 colloquy, the court imposed the jointly recommended sentence of 12 to 15 years.

{¶9} Nash timely filed the instant appeal and asserts three assignments of error:

{¶10} "[NASH] WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION;

{¶11} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT TRANSFERRED [NASH'S] CASE FOR CRIMINAL PROSECUTION, IN VIOLATION OF R.C. 2152.12(B); FIFTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTION 10, OHIO CONSTITUTION; AND

{¶12} [NASH'S] ADULT PRISON SENTENCE IS UNAUTHORIZED BY AND CONTRARY TO LAW BECAUSE THE TRIAL COURT PLAINLY FAILED TO COMPLY WITH THE MANDATORY SENTENCING PROVISIONS OF R.C. 2929.19(B)(L)(B), WHICH NOW REQUIRE TRIAL COURTS TO CONSIDER A CHILD'S YOUTH AND ALL OF ITS ATTENDANT CHARACTERISTICS BEFORE SENTENCING THEM TO ADULT PRISON. CRIM.R. 52; R.C. 2929.19(B)(L)(B); 2953.08(A)(4), (G)."

## PRELIMINARY ISSUE OF WAIVER

{¶13} In response to appellant's first and second assignments of error, the State contends that Nash waived such errors on appeal because he knowingly pled guilty pursuant to a negotiated plea deal. Because these assignments of error do not relate to counsel's representation of Nash regarding the plea, the State claims all errors not related to the entry of the plea are waived. However, we decline to address the merits of the State's argument, given that Ohio courts have seemingly reviewed appeals regarding amenability and transfer to adult court, even where the juvenile pled guilty.[2] As such, the Court will address Nash's assignments of error.

---

[2] In *State v. T.S.,* the Eighth District discussed this issue at length. *State v. T.S.,* 2024-Ohio-4898, ¶ 70, **appeal allowed,** 2025-Ohio-481, ¶ 70. The Eighth District stated "[t]he Ohio Supreme Court has held that a defendant may not immediately appeal a juvenile court's order transferring jurisdiction of his or her case

**SECOND ASSIGNMENT OF ERROR**

{¶14} Because the second assignment of error requires a recitation of the full background, the Court will address it first.  In the *second assignment of error*, Nash argues the trial court abused its discretion and improperly transferred the case to adult criminal court when the safety of the community could be adequately protected, there was appropriate time and resources in the juvenile system, and the defendant was amenable to treatment.

### Discretionary transfer and amenability

{¶15} Juvenile courts have exclusive jurisdiction over an alleged delinquent for committing an act when that person is under 18 years but said act would constitute an "offense" if committed by a person over 18 years.  *State v. Davis*, 2010-Ohio-3782, ¶ 13 (4th Dist.), quoting *State v. West*, 2006-Ohio-3518, ¶ 10 (4th Dist.), citing R.C. 2152.03 and 2152.10.  Despite this exclusive jurisdiction, the juvenile court also has "wide latitude" to retain or relinquish its jurisdiction based on the facts and circumstances of a particular case.  *West*, ¶ 10.

{¶16} When a complaint is filed in juvenile court alleging that a child is delinquent for committing an act that would be a felony if committed by an adult, the juvenile court *may transfer* the child – known as a discretionary transfer - to adult court for prosecution

---

to adult court but must wait to appeal any error stemming from the order until it becomes a final judgment, following conviction and sentencing, in the general division." *Id.*, citing *See In re D.H.*, 2018-Ohio-17, ¶ 1, 22; *In re Becker*, 39 Ohio St.2d 84, 314 N.E.2d 158 (1974), syllabus. "We do not believe a defendant must choose to go to trial, rather than enter a guilty plea, in order to preserve his or her right to challenge errors in the juvenile court's amenability determination." *Id.*, citing *Smith v. May*, 2020-Ohio-61, ¶ 29 ("Juveniles facing bindover to an adult court maintain the right to object to a juvenile court's noncompliance with bindover procedures and the right to appeal from any error in the ordinary course of law.").

if it finds: (1) that the child was at least 14 years old at the time of the charged act; (2) that there is probable cause to believe that the child committed the charged act; (3) that the child is not amenable to care or rehabilitation within the juvenile system; and (4) the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B)(1)-(3); *State v. E.T.,* 2019-Ohio-1204, ¶¶ 30-31, ("When the state requests a discretionary bindover, the juvenile court is * * * [required] to determine the age of the child and whether probable cause exists to believe that the juvenile committed the act charged."). *In re M.P.,* 124 Ohio St.3d 445 at ¶ 12.

{¶17} Here, Nash was over 14, waived his right to a probable cause hearing, and stipulated to a finding of "probable cause" for the offenses listed in the State's complaint. Thus, the main issue the juvenile court had to resolve before proceeding with a discretionary transfer was Nash's amenability to treatment and corresponding safety to the community. *E.T.,* ¶¶ 31-31 (discussing discretionary juvenile bindover proceedings).

{¶18} The juvenile court holds a hearing to determine whether the child is "amenable" to care or rehabilitation within the juvenile system. The juvenile court must order "an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the determination." *State v. Nicholas*, 2022-Ohio-4276, ¶ 4, citing R.C. 2152.12(C).

{¶19} In addition to determining amenability, the juvenile court **must** consider the statutory factors weighing in favor of and against transfer as set forth in R.C. 2152.12(D) and (E). The factors include:

**1)** The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act;

**2)** The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim;

**3)** The child's relationship with the victim facilitated the act charged;

**4)** The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity;

**5)** The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm;

**6)** At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction;

**7)** The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system;

**8)** The child is emotionally, physically, or psychologically mature enough for the transfer;

**9)** There is not sufficient time to rehabilitate the child within the juvenile system.

**{¶20}** The court balances the above, and any other relevant factors, with the factors listed in R.C. 2152.12(E) that weigh *against* the transfer including:

(1)     The victim induced or facilitated the act charged;

(2)     The child acted under provocation in allegedly committing the act charged;

(3)     The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person;

(4)     The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged;

(5)     The child previously has not been adjudicated a delinquent child;

(6)     The child is not emotionally, physically, or psychologically mature enough for the transfer;

(7)     The child has a mental illness or intellectual disability;

(8)     There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

**{¶21}** "There is no requirement that every factor must be 'resolved against the juvenile so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment.'" *State v. Bryant*, 2024-Ohio-1192, 2024 WL 1340231, ¶ 16 (2d Dist.), quoting *State v. Haynie*, 1995 WL 55289, *5 (12th Dist. Feb. 13, 1995).  However, the court must indicate on the record the specific factors that were weighed and applicable

in making its determination.  R.C. 2152.12(B)(3). *State v. Nicholas*, 2022-Ohio-4276*, ¶* 5. Based on this detailed statutory framework, it is clear that the juvenile court does not lightly transfer cases to adult court and does so only after careful consideration of the circumstances in a particular case.

**Standard of Review and Analysis**

**{¶22}** A juvenile court's decision to exercise its discretion to transfer must be supported by a preponderance or greater weight of the evidence. *Nicholas*, ¶ 35.  In other words, the State must tip the scales in favor of transfer.  The specific determination of amenability is a broad assessment of individual circumstances and is inherently individualized and fact-based.  *State v. Blair*, 2017-Ohio-5865, ¶ 25 (5th Dist.). Thus, a juvenile court's determination as to a child's amenability is reviewed by an appellate court under an abuse-of-discretion standard. *State v. Nicholas*, 2022-Ohio-4276, ¶ 22, citing *In re M.P.*, 2010-Ohio-599, ¶ 14.  A decision is an abuse of discretion when it is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶23}** Nash makes several arguments to support his assignment of error that the trial court improperly transferred Nash.  Those arguments include: (1) the juvenile court failed to consider the unique characteristics of children and that adult treatment of children increases recidivism rates; (2) Nash had no prior offense of violence and had not yet been committed to DYS; (3) sufficient time existed to provide juvenile-specific services to Nash to rehabilitate; (4) Nash was amenable to the juvenile system given the lack of previous intervention by that system; and (5) the juvenile court relied too heavily on the facts

underlying the charges without support in the record. Nash's arguments are not well-taken.

**{¶24}** The State moved to transfer Nash to adult court due to the seriousness of the charges and resulting harm. Because it would be a discretionary transfer and not a mandatory one, the juvenile court properly ordered an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child. *See* R.C. 2152.12(C). Dr. Aimee Thomas evaluated Nash and provided a detailed amenability report discussing the factors that weighed in favor of amenability as well as those factors weighing against.

**{¶25}** After the evaluation, the court conducted an amenability hearing, heard arguments from counsel, reviewed Dr. Thomas' report, and spoke to the family – specifically noting that it is ultimately the court's decision whether the juvenile is amenable. See Tr. of Proc., August 24, 2023, p. 8. Rather than ruling from the bench, the court took the matter under advisement. In its September judgment entry, the Court issued Findings of Fact and Conclusions of Law to support Nash's discretionary transfer including: the seriousness of the offenses and resulting physical harm, allegations of gang activity, that Nash possessed, brandished, and discharged a firearm, that he was previously adjudicated a juvenile delinquent and prior attempts at rehabilitating Nash failed, that Dr. Thomas concluded Nash was likely to reoffend, that Nash was physically, psychologically, and emotionally mature enough to transfer, and that his age did not allow sufficient time to rehabilitate him.

**{¶26}** The Court went on to discuss the factors it was required to consider that weighed *against* transfer. However, only one of those factors applied – that Nash had a mental health diagnosis of conduct disorder. The court found that no victim induced the act; Nash was not under provocation, Nash was the principal actor and brought the gun to the party, Nash shot into the crowd, Nash caused serious injury to a victim, and there were no sufficient factors to indicate that Nash would be responsive to juvenile rehabilitation.

**{¶27}** Nash does not cite to any factor that the court did not consider but simply argues that a child's youth, by definition, makes him or her amenable. Although Nash claims he had no prior offenses and had not been committed to ODYS, he was adjudicated a delinquent, was in the "system" since 2016, and had participated in prior diversion efforts that ultimately failed. Moreover, given the nature of Nash's actions, the trial court did not err in finding that the safety of the community required transfer.

**{¶28}** The trial court thoroughly considered the facts, held an amenability hearing, heard arguments from counsel, considered Dr. Thomas' report, considered the statutory factors in support of and against transfer, and supported its decision on the record. As such, this Court finds that the trial court's decision is supported by a greater weight of the evidence such that it did not abuse its discretion in ordering Nash transferred to adult court. Simply stated, the evidence in the record clearly supports the discretionary transfer, and did not violate any provisions of the U.S. or Ohio Constitutions. **Accordingly, Nash's second assignment of error is overruled.**

**{¶29}** In the *first assignment of error*, Nash argues he was deprived of his right to effective assistance of counsel guaranteed by the U.S. and Ohio Constitutions because counsel stipulated to the amenability report - rather than challenging the evaluator's opinion or presenting mitigating evidence via cross examination.

**Standard of Review**

**{¶30}** The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668 (1984), and was discussed by this court in *Mansfield v. Studer,* 5th Dist. Richland Nos. 2011-CA-93 and 2011-CA-94, 2012-Ohio-4840:

(1)     A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, (1993); *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989).

(2)     In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111 (2009).

(3)     In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a

criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland* at 689. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* 689; *Studer,* at ¶¶ 58-61.

**{¶31}** Thus, to prevail on an ineffective assistance of counsel argument, Nash must establish **two** prongs: first, that his trial counsel's performance fell below an objective standard of reasonable representation involving a "substantial violation" of an essential duty to Nash. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland* at 687. Second, Nash must demonstrate actual prejudice by such alleged ineffectiveness. In other words, is it a reasonable probability that *but for* counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland* at 691-696.

**{¶32}** Importantly, as stated above, an appellate court's review of trial counsel's actions and decisions is highly deferential and strategic or tactical decisions will not form a basis for an ineffective assistance of counsel claim. *Id.* at 689; *State v. Clayton*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Mason*, 82 Ohio St.3d 144, 157-58 (1998) (stating that an appellate court may not second guess a trial counsel's strategy decisions). Here, Nash argues that but for counsel's error of stipulating to the report, and thus, ending any inquiry into the report's contents, there is a reasonable probability that the findings would have been different (e.g. he would not have been transferred to adult court had he not stipulated to the report). Nash claims that his counsel should have investigated more to

find mitigating evidence to support Nash. However, Nash's arguments fall short of the *Strickland* standard.

**{¶33}** Nash's counsel had the opportunity and did in fact argue at the amenability hearing regarding the factors *in favor of* Nash's amenability and against the transfer to adult court. The record makes clear that counsel did ***not*** stipulate to amenability itself, and the court expressly stated that it appreciated the fact that Dr. Thomas **did not** give an ultimate opinion on amenability. Instead, the report stated factors *in favor of staying* within the juvenile system as well as factors against. The court must ultimately determine a juvenile's amenability.

**{¶34}** Because the trial court made its own decision, based on numerous factors, there can be no serious argument that counsel's stipulation "error" was *so serious* that counsel was not functioning as that guaranteed by the Sixth Amendment. Strategic decisions such as stipulations to evidence cannot form the basis of an ineffective assistance claim. *Strickland*, at 689. Because Nash cannot demonstrate the first prong of *Strickland*, we decline to address the second prong of the *Strickland* test. To the contrary, Nash's counsel successfully negotiated a deal requiring the State to dismiss the most serious of the charges against him, attempted murder. The results speak for themselves. **For these reasons, Nash's first assignment of error is overruled.**

## THIRD ASSIGNMENT OF ERROR

**{¶35}** In his *third and final assignment of error*, Nash maintains the sentencing judge failed to consider defendant's youth and all "attendant circumstances" as required under R.C. 2929.19(B)(1)(b). Nash claims the trial court failed to recognize that children are categorically "less culpable" than adults and Nash is entitled to a new sentencing

hearing. Nash's argument is not well-taken. We have determined that Nash was properly transferred to adult court. As such, the imposition of a jointly recommended sentence and accepted by the trial court as part of a negotiated plea agreement is authorized by law and unreviewable absent "plain error."

**Standard of Review**

**{¶36}** 1)  "[I]n order to prevail under a plain error analysis, the appellant bears the burden of demonstrating that the outcome of the proceedings clearly would have been different but for the error." *State v. Harris*, 2012-Ohio-802, ¶ 9 (8th Dist.), citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. *See also State v. Sanders*, 92 Ohio St.3d 245 (2001) (plain error will be recognized only where, but for the error, the outcome of the case would clearly have been different). We are to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Rogers*, 2015-Ohio-2459, ¶ 23.

**{¶37}** R.C. 2953.08(D)(1) provides, "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by the sentencing judge." Accordingly, "[g]enerally speaking, a defendant cannot challenge a jointly-recommended sentence on appeal." *State v. Shepherd*, 2024-Ohio-4618 ¶ 8 (9th Dist.) (involving a juvenile who was transferred to adult court, and finding that a sentence imposed upon a defendant is not subject to review if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution

in the case, and is imposed by the sentencing judge), quoting, *State v. Zazzara*, 2019-Ohio-662, ¶ 10 (9th Dist.).

{¶38} The Supreme Court of Ohio has stated:

R.C. 2953.08(D)(1), which is one of the other limitations on the right to appeal a felony sentence under R.C. 2953.08, involves a situation in which the trial court does not *exercise its discretion* in imposing a sentence. R.C. 2953.08(D)(1) precludes appellate review under R.C. 2953.08 when the sentence is authorized by law, has been recommended jointly by the parties, and is imposed by the sentencing judge. In that situation, appellate review under R.C. 2953.08 is unnecessary because the parties have agreed that the sentence is appropriate and the trial court accordingly has elected not to exercise its broad discretion in determining the sentence. (emphasis added).

{¶39} *Shepherd* at ¶ 8, quoting *State v. Grevious*, 2022-Ohio-4361, ¶ 32. R.C. 2953.08 as a whole, demonstrates the legislature's intent to provide appellate review of trial courts' "*great discretion*" in sentencing and an opportunity for appellate courts to review such exercise of discretion for uniformity and fairness. *Grevious*, ¶¶ 35, 36 (emphasis added). Conversely, the General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate. *Grievous*, ¶ 32.

{¶40} Here, as in *Shepherd,* the State and Nash, through counsel, agreed that the sentence, as imposed, was appropriate and made a **joint recommendation** to the trial court. Moreover, the sentence is the *mandatory minimum* required under Ohio's

sentencing statutes for Nash's offenses. The trial court *did not* exercise discretion and did not need to independently justify imposing the jointly recommended sentence. *Shepherd* at ¶ 8.

{¶41} The State and Nash, through counsel, entered into a negotiated plea agreement *limiting* his aggregate sentencing for the indicted charges – Nash pled guilty to two counts of felonious assault with firearm specifications and the State dismissed one count of attempted murder with firearm and one count of inducing panic with firearm. Nash did not object to the plea agreement, he admitted to signing the agreement, and the parties jointly presented the written plea form to the trial court. After the required Crim. R. 11 colloquy, the trial court accepted the guilty plea and sentenced Nash to the *mandatory minimum*. Other than summarily arguing that his sentence was contrary to law because the trial court did not specifically reference R.C. 2929.19, as well as citing psychological arguments, Nash falls way short of demonstrating plain error in this case. To the contrary, Nash received the best deal possible considering the facts and circumstances in this case. **Accordingly, Nash's third assignment of error is overruled.**

## CONCLUSION

{¶42} Based upon the foregoing, appellant's first, second, and third assignments of error are overruled and the judgment of the Stark County Court of Common Pleas, is affirmed in all respects.


By: Montgomery, J.

Hoffman, P.J. and

Popham, J. concur.