Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/02/2016 09:10 AM CST

In re Interest of Tyrone K., a child
under 18 years of age.
State of Nebraska, appellee,
v. Tyrone K., appellant.

___ N.W.2d ___

Filed December 2, 2016.    No. S-15-1057.

1.  **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional issue that
    does not involve a factual dispute presents a question of law, which an
    appellate court independently decides.
2.  **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case,
    as in any other appeal, it is the duty of an appellate court to determine
    whether it has jurisdiction over the matter before it.
3.  **Statutes: Appeal and Error.** Statutory language is to be given its plain
    and ordinary meaning, and an appellate court will not resort to inter-
    pretation to ascertain the meaning of statutory words which are plain,
    direct, and unambiguous.
4.  **Statutes.** It is not within the province of a court to read a meaning into
    a statute that is not warranted by the language; neither is it within the
    province of a court to read anything plain, direct, or unambiguous out of
    a statute.
5.  **Statutes: Legislature: Intent.** In reading a statute, a court must deter-
    mine and give effect to the purpose and intent of the Legislature as
    ascertained from the entire language of the statute considered in its
    plain, ordinary, and popular sense.
6.  ____: ____: ____. Components of a series or collection of statutes
    pertaining to a certain subject matter are in pari materia and should
    be conjunctively considered and construed to determine the intent of
    the Legislature, so that different provisions are consistent, harmonious,
    and sensible.
7.  **Statutes: Courts.** A court's proper role is to interpret statutes and
    clarify their meaning.

8. **Statutes: Legislature: Public Policy.** It is the Legislature's function through the enactment of statutes to declare what is the law and public policy of this state.

9. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), an appellate court may review three types of final orders: (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.

10. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

11. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

12. ____: ____. A substantial right is not affected for purposes of appeal when that right can be effectively vindicated in an appeal from the final judgment.

13. **Statutes: Judgments: Juvenile Courts: Appeal and Error.** The fact that the statutory scheme enacted by 2014 Neb. Laws, L.B. 464, contains no specific provision regarding appellate review of juvenile transfer orders does not mean such orders are immune from appellate review on direct appeal after final judgment.

14. **Records: Appeal and Error.** It is the appellant's burden to create a record for the appellate court which supports the errors assigned.

15. **Constitutional Law: Juvenile Courts: Criminal Law.** There is no constitutional right to proceed in juvenile court rather than criminal court.

16. **Juvenile Courts: Criminal Law.** A juvenile whose case may be transferred to criminal court has no right to have his or her case remain in juvenile court, and an order transferring such a case from juvenile to criminal court does not affect a substantial right.

17. **Constitutional Law: Juvenile Courts: Legislature.** Access to juvenile court is a statutory right granted and qualified by the Legislature; it is not a constitutional imperative.

18. **Juvenile Courts: Criminal Law.** Juveniles whose cases may be transferred to criminal court, and juveniles whose cases may be directly filed in criminal court, have no right to avoid the collateral consequences of a criminal conviction.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Appeal dismissed.

Joe Nigro, Lancaster County Public Defender, and Sarah J. Safarik for appellant.

Joe Kelly, Lancaster County Attorney, and Ashley J. Bohnet for appellee.

Juliet Summers for amicus curiae Voices for Children in Nebraska and Christine Henningsen, of Center on Children, Families and the Law at the University of Nebraska-Lincoln, for amicus curiae Nebraska Youth Advocates.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Stacy, J.

This case presents the issue of whether an order granting a motion to transfer a juvenile case to criminal court is final and appealable. We conclude it is not, and dismiss the appeal as premature.

## I. FACTS

A petition filed in juvenile court on September 4, 2015, alleged 16-year-old Tyrone K. committed four counts of theft by receiving stolen property and one count of operating a motor vehicle to avoid arrest. The charges arose from a series of vehicle thefts which occurred after Tyrone escaped from a youth rehabilitation and treatment center. The alleged law violations were classified as two Class III felonies, a Class IV felony, and two Class I misdemeanors.[1] Due in part to Tyrone's extensive history in the juvenile court system, the prosecutor immediately moved to transfer the proceedings to county court for arraignment and further proceedings under the criminal code.[2] After conducting an evidentiary hearing, the juvenile court granted the motion to transfer. Tyrone filed this appeal. We moved the case to our docket on our own

---

[1] See Neb. Rev. Stat. §§ 28-517, 28-518, and 28-905 (Reissue 2016).

[2] See Neb. Rev. Stat. § 43-274(5) (Reissue 2016).

motion pursuant to our statutory authority to regulate the case-loads of the appellate courts of this state.[3]

## II. STANDARD OF REVIEW

[1] A jurisdictional issue that does not involve a factual dispute presents a question of law, which an appellate court independently decides.[4]

## III. ASSIGNMENTS OF ERROR

Tyrone assigns there was insufficient evidence for the juvenile court to transfer his case to county court.

## IV. ANALYSIS

[2] In a juvenile case, as in any other appeal, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[5] Neb. Rev. Stat. § 43-2,106.01 (Reissue 2016) gives an appellate court jurisdiction to review "[a]ny final order or judgment entered by a juvenile court . . . ." Whether we have jurisdiction to review the juvenile court's transfer order at this point in the proceedings depends on whether Tyrone has appealed from either a judgment or a final order.

A transfer order is not a judgment, and no party argues otherwise. The transfer order did not address or decide the merits of the alleged law violations and made no final determination of the parties' rights;[6] it merely determined the state court forum in which the case would proceed. Therefore, the threshold question presented here is whether Tyrone has appealed from a final order.

Tyrone makes two arguments in support of his position that a transfer order is a final order. First, he argues the Legislature

---

[3] Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

[4] See *Purdie v. Nebraska Dept. of Corr. Servs.*, 292 Neb. 524, 872 N.W.2d 895 (2016).

[5] *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 861 N.W.2d 398 (2015).

[6] See Neb. Rev. Stat. § 25-1301 (Reissue 2016).

redefined transfer orders as final orders when it enacted 2014 Neb. Laws, L.B. 464. Second, he argues the transfer order is a final order under Neb. Rev. Stat. § 25-1902 (Reissue 2016), because it was made in a special proceeding and affects a substantial right. We address each argument in turn. Before doing so, however, it is necessary to provide an overview of the relevant statutes.

## 1. Overview of New Juvenile Statutes

From 1974 to 2014, when a juvenile committed a law violation, the relevant juvenile delinquency statutes gave the prosecuting attorney substantial discretion regarding whether to file charges in criminal court, file delinquency proceedings in juvenile court, or offer juvenile pretrial diversion or mediation.[7] If the prosecutor elected to file in criminal court, the juvenile could file a motion asking that the case be transferred to the juvenile court for further proceedings under the Nebraska Juvenile Code.[8]

In 2014, through L.B. 464, the Legislature made significant changes to this statutory scheme. According to the Introducer's Statement of Intent:

Nebraska is one of the few states that allows prosecutors broad authority in deciding whether or not to file charges in adult or juvenile court. . . . In 2010 in Nebraska, 45 percent of filings against youth were in adult court, despite the fact that nearly 90 percent of charges against youth in adult court were misdemeanors. Requiring more cases to originate in juvenile court will give more youth a chance at rehabilitation and reduce their chance of having a criminal record.[9]

---

[7] See § 43-274(4) (Reissue 2008) and Neb. Rev. Stat. § 43-276 (Cum. Supp. 2012).

[8] Neb. Rev. Stat. § 29-1816 (Cum. Supp. 2012).

[9] Introducer's Statement of Intent, L.B. 464, Judiciary Committee, 103d Leg., 1st Sess. 1 (Mar. 6, 2013).

Generally speaking, L.B. 464 limited the discretion of prosecutors to decide whether a case should be filed in juvenile or criminal court, and replaced it with a three-tiered jurisdictional structure that specifies the court in which a case should be filed, depending on the age of the juvenile and the nature of the alleged law violation. The new jurisdictional structure is first set out in Neb. Rev. Stat. § 43-246.01 (Reissue 2016). The relevant sections of L.B. 464 became operative January 1, 2015.[10]

### (a) Exclusive Original Jurisdiction

Section 43-246.01(1) grants exclusive original jurisdiction to the juvenile court over offenders who (1) are under 16 years of age and committed a misdemeanor or infraction, other than a traffic offense, or (2) are under 14 years of age and committed a felony.[11] Proceedings against these juvenile offenders must always be filed via a juvenile petition and must always proceed to completion in juvenile court.[12] Tyrone does not fall into this category of juvenile offenders.

### (b) Original Jurisdiction
### Subject to Transfer

Section 43-246.01(2) grants original jurisdiction to the juvenile court over juvenile offenders who are (1) 16 years of age and committed a misdemeanor[13] or (2) 14 years of age or older and committed a felony lesser in grade than a Class IIA.[14] Actions against these juvenile offenders must always be initiated in juvenile court by filing a juvenile petition, but are subject to transfer to county or district court

---

[10] 2014 Neb. Laws, L.B. 464, § 37.

[11] See Neb. Rev. Stat. § 43-247(1) and (2) (Supp. 2015).

[12] § 43-246.01(1).

[13] As of January 1, 2017, this jurisdiction also extends to juveniles who are 17 years old, pursuant to § 43-246.01(2)(a).

[14] § 43-246.01(2)(b).

for further proceedings under the criminal code.[15] All of the allegations against Tyrone, except the allegation of operating a motor vehicle to avoid arrest, put him in this category of juvenile offenders.

### (c) Concurrent Jurisdiction

Section 43-246.01(3) grants to the juvenile court and the county or district courts concurrent jurisdiction over juvenile offenders who (1) commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony.[16] Actions against these juveniles may be initiated either in juvenile court or in the county or district court.[17] The allegation against Tyrone of operating a motor vehicle to avoid arrest put him within this category of juvenile offenders.

All of the offenses allegedly committed by Tyrone are offenses over which both the juvenile court and the criminal court can exercise jurisdiction under the new statutory scheme. With respect to such offenses, if the action is initiated in juvenile court, a party can move to transfer it to county or district court via § 43-274(5) (Reissue 2016), a new statutory provision created by L.B. 464.[18] And if the action is initiated in county or district court, a party can move to transfer it to juvenile court via § 29-1816 (Reissue 2016).[19] Section 29-1816 existed prior to the enactment of L.B. 464, but was amended by it.

### (d) Transfers Under § 43-274(5)

All of the allegations against Tyrone were initiated via a petition filed in juvenile court, and the prosecutor simultaneously

---

[15] § 43-246.01(2).

[16] § 29-1816(1)(a)(ii).

[17] See §§ 43-246.01(3) and 29-1816.

[18] § 43-246.01(3).

[19] § 29-1816(1)(a)(ii) and (2).

filed a motion to transfer the proceedings to criminal court. Section 43-274(5) controls in this circumstance. That section authorizes a city or county attorney to seek a transfer to criminal court when both the juvenile court and the criminal court have statutory jurisdiction.[20] It specifies that the transfer motion must be filed with the juvenile court petition, and requires the juvenile court to schedule a hearing on the motion within 15 days.[21] The city or county attorney has the burden to prove by a preponderance of the evidence that the case should be transferred.[22] The juvenile court must make a decision within 30 days of the hearing, and must "set forth findings for the reason for its decision."[23]

### (e) Transfers Under § 29-1816

Both before and after L.B. 464, § 29-1816 provided that if the case is filed in county or district court, at the time of arraignment, the court must advise the juvenile that he or she may move at any time not later than 30 days after arraignment to transfer the case to the juvenile court for further proceedings under the Nebraska Juvenile Code. If the juvenile so moves, a hearing must be held within 15 days, and the court "shall" transfer the case "unless a sound basis exists for retaining the case."[24] The county or district court must "set forth findings for the reason for its decision."[25]

Prior to L.B. 464, § 29-1816 specifically provided that the county or district court's ruling on a motion to transfer an action to juvenile court "shall not be a final order for the purpose of enabling an appeal."[26] But L.B. 464 removed this

---

[20] § 43-274(5).

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] § 29-1816(3)(a).

[25] § 29-1816(3)(b).

[26] § 29-1816(2)(c) (Cum. Supp. 2012).

language, and § 29-1816 (Reissue 2016) is now silent as to the finality of an order ruling on a motion to transfer a case from criminal court to juvenile court. Similarly, § 43-274(5), the new statute enacted by L.B. 464, is silent regarding whether a juvenile court's ruling on a motion to transfer an action to a county or district court is a final order.

## 2. L.B. 464 Did Not Determine
### Finality of Transfer Orders

Tyrone argues the transfer order is a final, appealable order. In doing so, he places much significance on the effect of L.B. 464 on §§ 29-1816 and 43-274(5). He argues that by deleting the nonfinal order language from § 29-1816, the Legislature intended to authorize interlocutory appeals from orders ruling on motions to transfer from criminal court to juvenile court. And he argues that because the Legislature intended to authorize interlocutory appeals from orders ruling on motions to transfer from criminal court to juvenile court under § 29-1816, we should judicially construe § 43-274(5) to also authorize interlocutory appeals from orders transferring cases from juvenile court to criminal court.

[3-6] Our analysis of the statutory changes made by L.B. 464 is guided by familiar rules of statutory construction. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[27] It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[28] In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire

[27] *State v. Sikes*, 286 Neb. 38, 834 N.W.2d 609 (2013); *State v. Parks*, 282 Neb. 454, 803 N.W.2d 761 (2011).

[28] *State v. Warriner*, 267 Neb. 424, 675 N.W.2d 112 (2004); *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002).

language of the statute considered in its plain, ordinary, and popular sense.[29] Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[30]

We find nothing in the legislative history, and the parties direct us to nothing, suggesting why the nonfinal order language of § 29-1816 was removed. Tyrone argues the removal of the language is significant in and of itself, based on the general rule that the Legislature is presumed to know the language used in its statutes, and if in a subsequent act on the same or similar subject it uses different terms in the same connection, a court should presume that a change in the law was intended.[31]

We are not convinced that this principle of statutory construction applies under these circumstances. Here, language prohibiting an interlocutory appeal was removed by L.B. 464, but no different terms were substituted in the same connection. Deleting a negative does not automatically create a positive.

Moreover, when articulating the procedure to be followed after a transfer order is granted by the juvenile court, the Legislature left no room in the statutory process for interlocutory appeal, providing instead:

> If the proceeding is transferred from juvenile court to the county court or district court, the county attorney or city attorney shall file a criminal information in the county court or district court, as appropriate, and the accused shall be arraigned as provided for a person eighteen years of age or older . . . .[32]

---

[29] *State v. Mucia*, 292 Neb. 1, 871 N.W.2d 221 (2015); *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

[30] *State v. Hernandez*, 283 Neb. 423, 809 N.W.2d 279 (2012).

[31] See *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

[32] § 43-274(5).

Generally, when the Legislature has authorized interlocutory appeals from orders entered in ongoing criminal cases, it has done so expressly and has set out detailed and specific procedures for such appeals which balance the interests of the litigants and the interests of justice.[33] In contrast, L.B. 464 contains no specific procedures governing appellate review of transfer orders, and the statutory procedure the prosecutor is to follow after a transfer order is granted appears designed to facilitate timely resolution of the criminal matter, not interlocutory appeal.

Although Tyrone urges us to conclude otherwise, we are not persuaded that anything meaningful can be gleaned from the fact that § 43-274(5) is silent regarding the finality of a juvenile court's order on a motion to transfer a case to county or district court. We note that when L.B. 464 first was introduced, § 43-274 contained a provision that a juvenile court's decision to transfer proceedings to criminal court "shall be a final order for the purpose of enabling an appeal."[34] But that final order language was omitted from § 43-274 during the legislative process, and we find nothing in the legislative history explaining why this language was removed. Tyrone urges us to interpret § 43-274(5) to supply by implication the very language which the Legislature pointedly rejected. We decline to do so. It is not within the province of the courts to read a meaning into a statute that is not there.[35]

Considering §§ 29-1816 and 43-274 together, we observe that when enacting L.B. 464, the Legislature removed language from § 29-1816 that *prevented* transfer orders from being final and appealable, and also removed proposed language from § 43-274 that would have *made* transfer orders final and

---

[33] See, e.g., Neb. Rev. Stat. §§ 29-116 through 29-118 and 29-824 through 29-826 (Reissue 2016).

[34] Introduced Copy, L.B. 464, Judiciary Committee, 103d Leg., 1st Sess. 14 (Jan. 22, 2013).

[35] *Republic Bank v. Lincoln Cty. Bd. of Equal.*, 283 Neb. 721, 811 N.W.2d 682 (2012); *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004).

appealable. Consequently, after L.B. 464, we are left with juvenile transfer statutes that are uniformly silent on whether any transfer orders are final and appealable.

[7,8] The briefing submitted to this court advances several public policy arguments both for and against authorizing interlocutory appellate review of transfer orders in juvenile cases. But a court's proper role is to interpret statutes and clarify their meaning,[36] and it is the Legislature's function through the enactment of statutes to declare what is the law and public policy of this state.[37] Within the proper confines of established rules of statutory construction, we find nothing which permits the conclusion that the Legislature intended, by either silence or omission, to affirmatively confer a statutory right of interlocutory appeal from an order on a motion to transfer a case from criminal court to juvenile court, or vice versa. We conclude that when the Legislature removed the final order language from § 29-1816 without adding any different language pertaining to finality, it left to the judiciary the familiar task of applying Nebraska's final order statute, § 25-1902, to determine whether transfer orders are final and appealable.

### 3. Transfer Orders Are Not Final Orders Under § 25-1902

[9] Under § 25-1902, an appellate court may review three types of final orders: (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.[38] The order here neither determined

---

[36] *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

[37] *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

[38] *Shasta Linen Supply v. Applied Underwriters*, 290 Neb. 640, 861 N.W.2d 425 (2015).

the action and prevented a judgment; nor was the order made on summary application after judgment. As such, the transfer order is final and appealable only if it was made during a special proceeding and affected a substantial right.

The transfer decision was made by the juvenile court, and as a general rule, juvenile delinquency proceedings are considered special proceedings.[39] For purposes of this appeal, we assume without deciding that the transfer order at issue was made in a special proceeding. We focus our analysis on whether the order from which Tyrone appeals affected a substantial right. Specifically, the question presented is whether a substantial right of a juvenile is affected when the juvenile court grants the prosecutor's motion to transfer a case to county court and both the juvenile court and the county court have statutory authority to resolve the proceeding.

[10-12] A substantial right is an essential legal right, not a mere technical right.[40] A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.[41] A substantial right is not affected for purposes of appeal when that right can be effectively vindicated in an appeal from the final judgment.[42]

In asserting that the transfer order is final and appealable, Tyrone presents three general arguments. First, he argues that if an interlocutory appeal is not allowed now, he will forever lose his right to appeal from the transfer order. Second, he argues that the transfer order affects a substantial right, because a

---

[39] See *In re Interest of Laurance S.*, 274 Neb. 620, 742 N.W.2d 484 (2007).

[40] *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015); *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

[41] *Becerra v. United Parcel Service*, 284 Neb. 414, 822 N.W.2d 327 (2012); *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

[42] See, *Schropp Indus. v. Washington Cty. Atty.'s Ofc.*, 281 Neb. 152, 794 N.W.2d 685 (2011); *State v. Vela*, 272 Neb. 287, 721 N.W.2d 631 (2006).

juvenile whose criminal charges are tried in county or district court is denied timely access to rehabilitative services such as pretrial evaluations, plans, and services. Third, he argues that the transfer order affects a substantial right, because a conviction in criminal court exposes him to collateral consequences in the form of loss of civil rights and privileges that are not at issue in juvenile proceedings.

(a) Appealing Transfer Order
After Final Judgment

Prior to L.B. 464, we regularly reviewed errors assigned to a trial court's ruling on a motion to transfer, and we did so at the conclusion of the criminal case as part of the direct appeal of the conviction and sentence.[43] Tyrone argues that under the statutory scheme enacted by L.B. 464, he cannot effectively challenge the transfer order at the conclusion of the criminal proceedings. We disagree.

Other jurisdictions addressing this question have concluded that a juvenile may appeal an order transferring his or her cause to criminal court at the conclusion of the criminal proceedings.[44] Indeed, several courts conclude this is the preferable procedure. As one court reasoned:

"To permit interlocutory review of [a transfer] order would obviously delay the prosecution of any proceeding

---

[43] See, *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015); *State v. Stevens*, 290 Neb. 460, 860 N.W.2d 717 (2015); *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996); *State v. Reynolds*, 247 Neb. 608, 529 N.W.2d 64 (1995); *State v. Ice*, 244 Neb. 875, 509 N.W.2d 407 (1994); *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990).

[44] See, *People v. Browning*, 45 Cal. App. 3d 125, 119 Cal. Rptr. 420 (1975), *overruled on other grounds, People v. Williams*, 16 Cal. 3d 663, 547 P.2d 1000, 128 Cal. Rptr. 888 (1976); *People in Int. of D.H.*, 37 Colo. App. 544, 552 P.2d 29 (1976); *Interest of Clay*, 246 N.W.2d 263 (Iowa 1976); *In re Appeal No. 961*, 23 Md. App. 9, 325 A.2d 112 (1974); *Interest of Watkins*, 324 So. 2d 232 (Miss. 1975); *In re T. J. H.*, 479 S.W.2d 433 (Mo. 1972); *In re Becker*, 39 Ohio St. 2d 84, 314 N.E.2d 158 (1974); *In re D.H.*, No. 27074, 2016 WL 4168867 (Ohio App. July 1, 2016).

in either the juvenile or the criminal division, with the
result that the prospect of a just disposition would be
jeopardized. In either proceeding the primary issue is
the ascertainment of the innocence or guilt of the person
charged. To permit interlocutory review [of a transfer
order] would subordinate that primary issue and defer
its consideration while the question of the punishment
appropriate for a suspect whose guilt has not yet been
ascertained is being litigated in reviewing courts. . . ."[45]

Tyrone's concern appears to be premised on the lack of
statutory direction as to how to attain appellate review of the
transfer order when a case is transferred from juvenile to crimi-
nal court. Section 43-274(5) provides:

If the proceeding is transferred from juvenile court to the
county court or district court, the county attorney or city
attorney shall file a criminal information in the county
court or district court, as appropriate, and the accused
shall be arraigned as provided for a person eighteen years
of age or older in . . . § 29-1816.

Tyrone argues this language prevents him from appealing the
transfer order at the conclusion of the criminal proceedings,
but it is not entirely clear from his briefing why he believes
this is so.

To the extent Tyrone's argument turns on the absence of a
clear statutory directive regarding the procedure by which a
party may seek appellate review of a juvenile court's transfer
order, we agree L.B. 464 did not include express provisions in
that regard.

[13] But contrary to Tyrone's argument, the fact that the
statutory scheme enacted by L.B. 464 contains no specific pro-
vision regarding appellate review of juvenile transfer orders
does not mean that transfer orders are somehow immune from

---

[45] *In re Becker, supra* note 44, 39 Ohio St. 2d at 86, 314 N.E.2d at 159. See,
also, *Interest of Clay, supra* note 44; *Interest of Watkins, supra* note 44;
*State v. Thomas*, 970 S.W.2d 425 (Mo. App. 1998); *In re Joseph T.*, 575
A.2d 985 (R.I. 1990).

appellate review on direct appeal after final judgment. We have not been directed to anything in the statutory scheme or in our court rules which would prevent a juvenile, on direct appeal from a criminal judgment, from requesting and presenting a sufficient record to support an assignment of error related to the juvenile transfer order which authorized the filing of the criminal proceedings.

We acknowledge that our current rules of appellate procedure, which were promulgated prior to the enactment of L.B. 464, were not designed to address and did not contemplate the need to create an appellate record from multiple courts with concurrent jurisdiction over a particular matter.[46] But the provisions of our current court rules do not support Tyrone's fundamental premise that error related to the transfer order cannot effectively be reviewed on direct appeal from any final judgment in the criminal case.

[14] It is the appellant's burden to create a record for this court which supports the errors assigned.[47] Under the existing appellate rules, there is nothing preventing an appellant from filing a praecipe in each court "from which the appeal is taken,"[48] directing the clerk to prepare the transcript necessary to support the assigned errors.[49] Likewise, nothing would preclude an appellant from filing a praecipe to prepare a bill of exceptions in each such court, with a copy delivered to the proper court reporting personnel.[50] The concerns articulated by Tyrone do not support the conclusion that he will be prevented from obtaining appellate review of the transfer order unless he is permitted to appeal immediately.

---

[46] See, generally, Neb. Ct. R. App. P. § 2-104 and § 2-105 (rev. 2010).

[47] See, *Centurion Stone of Neb. v. Whelan*, 286 Neb. 150, 835 N.W.2d 62 (2013); *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

[48] § 2-104(A)(1).

[49] See § 2-104(A)(1) and (2).

[50] See, generally, § 2-105.

## (b) Substantial Right to Rehabilitative
## Services in Juvenile Court

Tyrone argues he has a substantial right to proceed in juvenile court and receive timely access to the rehabilitative services available in that forum. This argument is premised on the assumption that because he was a minor at the time the alleged offenses were committed, he has a right to have his case proceed in juvenile court.

There is only one Nebraska case addressing this general premise. In *State v. Meese*,[51] a confidential informant purchased marijuana from a 16-year-old juvenile in May 1996. The juvenile was not charged or arrested until October 1997. She was nearly 18 years old at that time, and the charges were filed in county court. The juvenile moved to transfer the proceedings to juvenile court, and the county court denied her motion. The criminal case was then bound over to district court for trial.

[15] Prior to trial, the juvenile filed a motion to discharge. She argued the State's delay in charging her violated her right to due process of law, because it resulted in the county court, rather than the juvenile court, handling the case. We held she had not appealed from a final order. In doing so, we noted there is no constitutional right to proceed in juvenile court rather than criminal court, and we observed that on several occasions, we had waited until after any conviction and sentence to review the validity of a trial court's decision on a motion to transfer. We also explicitly stated "the loss of access to juvenile court itself does not affect a substantial right."[52]

Tyrone emphasizes that *Meese* was decided at a time when § 29-1816 specifically provided that the decision on a motion to transfer to juvenile court was not a final order, and thus he argues that *Meese* is not persuasive authority in light of the current version of that statute, which contains no such language.

---

[51] *State v. Meese*, 257 Neb. 486, 599 N.W.2d 192 (1999).

[52] *Id*. at 495, 599 N.W.2d at 199.

While we acknowledge the change in statutory language, we conclude it does not affect our reasoning in *Meese.*

This is so, in large part, because the current statutory language is not inconsistent with the statutory language in effect when *Meese* was decided. As noted earlier, the current version of § 29-1816 simply omits the language that specifically stated an order transferring a case from criminal court to juvenile court was not final and appealable. Thus, at most, the current version is silent as to whether a right to interlocutory appeal exists from such an order, whereas the former version expressly stated there was no such right. This difference in the statutory language does not undermine the holding in *Meese.*

[16] More important, despite Tyrone's arguments to the contrary, the jurisdictional changes brought about by L.B. 464 did not create a right to have his alleged offenses proceed in juvenile court rather than criminal court. It is true that when enacting L.B. 464, the Legislature sought to create a statutory scheme that would result in more alleged law violations against juveniles being filed in and resolved in juvenile court.[53] And under that statutory scheme, a certain category of juveniles do have the right to proceed exclusively in juvenile court.[54] Tyrone, however, is not one of those juveniles. Given his age and the nature of his alleged offenses, the current statute required that three of the four offenses against Tyrone must be originally filed in juvenile court.[55] But because all of Tyrone's alleged offenses are those which can, upon proper motion and showing, be transferred to criminal court,[56] Tyrone has no right under the current statutory scheme to have his case remain in juvenile court, so the order transferring his case does not affect a substantial right.

---

[53] See Introducer's Statement of Intent, *supra* note 9.

[54] See § 43-246.01(1).

[55] See § 43-246.01(2).

[56] See, § 43-246.01(2) and (3); § 43-274(5).

[17] Our reasoning in *Meese* was thus not affected by the changes in the statutory scheme. Even after L.B. 464, access to juvenile court is a statutory right granted and qualified by the Legislature; it is not a constitutional imperative. As such, we conclude the transfer of Tyrone's case from juvenile court to criminal court did not affect a substantial right.

Our holding in this regard does not ignore the importance of the unique opportunities and the juvenile-centered programs available in juvenile court. But in Nebraska, the possibility of disposition under the juvenile code remains available to juveniles even if their case is transferred from juvenile to criminal court. Neb. Rev. Stat. § 29-2204.02(4) (Supp. 2015) provides:

> If the defendant was under eighteen years of age at the time he or she committed the crime for which he or she was convicted, the court may, in its discretion, instead of imposing the penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code.

Tyrone concedes that § 29-2204.02(4) allows a juvenile tried in criminal court to receive disposition under the juvenile code. But he contends that the code also allows for pretrial juvenile services, while a criminal action does not, and he argues that transferring the case to criminal court has deprived him of the substantial right to receive preadjudication evaluations and rehabilitative services available in juvenile court. Again, however, under the current statutory scheme, Tyrone has no right to receive the rehabilitative services under the juvenile code, because both the juvenile court and the criminal court have jurisdiction over his case. A delay in receiving services to which he has no statutory right does not affect a substantial right.

### (c) Exposure to Collateral Consequences of Criminal Conviction

[18] Finally, Tyrone argues the transfer of his case to criminal court affects a substantial right, because a finding of guilt

would expose him to the collateral consequences of a criminal conviction. It is true that an adjudication of delinquency on the same charges would not result in a criminal record or the loss of civil rights. But as we noted previously, under the statutory scheme enacted by L.B. 464, juveniles whose cases may be transferred to criminal court, and juveniles whose cases may be directly filed in criminal court, have no right to avoid the collateral consequences of a criminal conviction. And of course, not all of the collateral consequences of a transfer from juvenile to criminal court are disadvantageous to juveniles. A transfer makes available rights that are restricted or unavailable in juvenile court, such as the right to a jury trial,[57] the right to a speedy trial,[58] and the full panoply of criminal procedural rights.

## V. CONCLUSION

For the foregoing reasons, we conclude the transfer order from which Tyrone appeals is not a final order. The appeal is dismissed.

APPEAL DISMISSED.

---

[57] Neb. Const. art. I, §§ 6 and 11; Neb. Rev. Stat. § 29-2004 (Reissue 2016).

[58] U.S. Const. Amend. VI; Neb. Const. art. I, § 11; Neb. Rev. Stat. § 29-1207 (Reissue 2016).