IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HILL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DASHAWN HILL, APPELLANT.

Filed May 15, 2018.   No. A-17-1268.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Korey T. Taylor for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Dashawn Hill was charged in the district court for Douglas County with use of a deadly weapon (firearm) to commit a felony, a Class IC felony, and robbery, a Class II felony. Hill appeals from the order which overruled his motion to transfer the case from district court to juvenile court. We affirm.

## BACKGROUND

A hearing was held on Hill's motion to transfer on November 30, 2017. The State offered three exhibits into evidence: the juvenile court file from Hill's previous juvenile adjudication, Hill's Douglas County record, and the Omaha Police Department incident report relevant to the pending charges. Hill presented testimony of Melissa Driscoll, the juvenile court coordinator with the Douglas County Public Defender's office.

- 1 -

In 2015, Hill was charged in juvenile court with four offenses: second degree trespass, a misdemeanor; damage to property, a violation of the Omaha Municipal Code; obstructing an officer, a violation of the Omaha Municipal Code; and possession of marijuana, an infraction. Hill ultimately admitted to the count of damage to property and the remaining charges were dismissed. He was placed on probation, in the home of his grandmother, under a tracker/electronic monitoring program. Hill's case plan involved participation in gang intervention, therapy, enrollment in school, participation in the "Triage Program," which is an after-school program, and in-home preservation services. Hill was successfully discharged from probation in June 2016. Hill has no other criminal history record in Douglas County.

The incident which resulted in the current charges occurred on September 7, 2017, when Hill was 16 years old. The police report reflects that a 13-year-old boy was walking down the street when a vehicle pulled in front of him, a male jumped out, approached the victim, pulled out a small black handgun, and demanded the victim's shoes. The male stated he would shoot the victim if he did not comply. The victim gave the male his shoes, after which he returned to the vehicle and it left the area. An eyewitness checked to see if the victim was okay, and heard the male say that if they followed him, he would shoot them both.

A few days later, the victim was contacted via social media by a particular user name who indicated he had the victim's shoes and offered to sell them back to him for $150. The message contained pictures of the user holding the victim's shoes. The victim advised law enforcement officers that he believed the user was possibly named Dashawn and a member of a particular gang. An officer looked through several police databases and positively identified the user as Hill. The officer also identified that Hill is a documented gang member. Police executed a search warrant at Hill's home that he shared with his mother, and the victim's shoes were recovered. Police also recovered a Ruger handgun from the master bedroom, a "[w]hite Ruger LCP firearm box," and an ammunition box with 12 live rounds. The Ruger firearm belonged to Hill's mother.

Hill was then taken into custody and interviewed by police. Hill told police that he knew the victim as an acquaintance. Hill indicated that he was supposed to purchase shoes from the victim on the night in question but instead he just took the shoes. Hill stated that he was holding a BB gun at the time of the incident but that he no longer had this gun. He denied using the firearm that was recovered during the search of his home. Hill stated that he had handled that gun before but had not used it.

Driscoll testified about the types of services that are available to the juvenile courts. A juvenile could be placed on probation for an open-ended period of time, and the juvenile could be required to participate in an array of services, including various therapies and gang intervention. Additionally, if more stringent services are needed, the juvenile court could order out of home placement depending on the youth's needs, which could include placement in foster care, a group home, a therapeutic group home, a residential treatment facility, or at the Youth Rehabilitation and Treatment Center (YRTC) in Kearney, Nebraska. Driscoll further testified to the types of services available at various group homes. Driscoll testified that Hill has never had group home placements or commitment at the YRTC and thus had not participated in any of the programs available there. Driscoll indicated that out-of-state group homes are available as well. She identified particular placements that accept juveniles with gun charges, including Boys Town, Omaha Home for Boys,

the YRTC, and two out-of-state placements. Services, along with transition planning, can be provided to youths at the juvenile level until they reach the age of 19, if needed.

On November 29, 2017, the district court entered an order denying the motion to transfer. The court noted that although Hill's probation was terminated successfully, and assuming he is guilty of the charges in this case, the services provided to him by the juvenile court did not change his criminal actions. The court found that the alleged crime is "extremely serious" in that a 13-year-old boy was robbed and threatened with a gun. The court concluded, after considering the criteria set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016), that it "has great concern for public safety and the ability of the Juvenile Court to provide any benefit to [Hill] in the short time that it would have control over him, which would be, realistically, less than two years. [Hill] will need a much longer period of rehabilitation for it to have any chance of success."

Hill timely appeals.

## ASSIGNMENT OF ERROR

Hill assigns that the district court abused its discretion in denying his motion to transfer to juvenile court and determining that the State had met its burden in proving a sound basis for retention of the case in district court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, the allegations against Hill put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Supp. 2017).

In the instant case, when Hill moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Reissue 2016):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile

court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a) and (b).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.* When a court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

Hill was 16 years old at the time of the incident and turned 17 years old in December 2017. He was previously placed on probation in juvenile court for a municipal code violation and was allowed to reside with his grandmother under an alternative electronic monitoring program. As a part of that probation, he was ordered to participate in gang intervention, therapy, an after-school program, in-home preservation services, and be enrolled in school. Hill was successfully released from probation in June 2016, and his juvenile record was sealed. Approximately 15 months later, Hill allegedly engaged in the criminal activity for which he is currently charged, thereby suggesting that the previous services provided to Hill in the juvenile court were unsuccessful to deter future criminal conduct. And, as noted by the district court, the current charges are serious and involve the use of a weapon to rob a young boy of his shoes.

In addition to the seriousness of the charges, the district court was concerned that the remaining period of time before Hill reaches majority is insufficient to successfully provide him with rehabilitative services. The juvenile court did not specifically comment on Driscoll's testimony. However, while Driscoll outlined several options that could be available to Hill should the matter be transferred to juvenile court, she did not offer testimony to show that Hill would be accepted into such treatment programs, he would be amenable to such services, or that the services

would likely be beneficial or successful in the approximate 2 years remaining before Hill reaches majority. See *State v. Ice*, 244 Neb. 875, 509 N.W.2d 407 (1994) (trial court determined that appellant required treatment and supervision for extended period, beyond age of majority; court properly considered statutory criteria and relevant evidence); *State v. Thieszen*, 232 Neb. 952, 442 N.W.2d 887 (1989) (no abuse of discretion in retaining jurisdiction over 15-year-old defendant where there was some evidence that he could have been successfully rehabilitated within remaining time as minor, crime was particularly violent and defendant might require treatment beyond age of majority); *State v. Blimling*, 25 Neb. App. 693, ___ N.W.2d ___ (2018) (record supported finding that defendant would require treatment beyond 19th birthday).

Upon our review of the record, we cannot say that the district court abused its discretion in denying Hill's motion to transfer to juvenile court and in finding a sound basis to retain jurisdiction in district court. While there were factors that weighed in favor of transferring the matter to juvenile court, there were other factors that weighed in favor of retaining jurisdiction in the district court. The district court balanced the factors it deemed most significant, and there was appropriate evidence to support its decision.

As recently noted by the Nebraska Supreme Court, "the possibility of disposition under the juvenile code remains available to juveniles even if their case is transferred from juvenile to criminal court." *In re Interest of Tyrone K.*, 295 Neb. 193, 211, 887 N.W.2d 489, 501 (2016). See, also, *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018). Specifically, Neb. Rev. Stat. § 29-2204.02 (Reissue 2016) provides:

> (6) If the defendant was under eighteen years of age at the time he or she committed the crime for which he or she was convicted, the court may, in its discretion, instead of imposing the penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code.

## CONCLUSION

Finding no error in the district court's denial of the motion to transfer to juvenile court, we affirm.

AFFIRMED.